**UNITED STATES of America, Plaintiff-Appellee,**

v.

**TWENTY–TWO THOUSAND, TWO HUNDRED EIGHTY SEVEN DOLLARS ($22,287.00), UNITED STATES CURRENCY, Defendant-Appellant.**

No. 81–1603.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 13, 1983.

Decided June 13, 1983.

Thomas D. Burkhart (argued), Saginaw, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Detroit, Mich., Robert Haviland, Michael J. Hluchaniuk (argued), Asst. U.S. Atty., Bay City, Mich., for plaintiff-appellee.

Before KEITH and MERRITT, Circuit Judges, BROWN, Senior Circuit Judge.

I

BAILEY BROWN, Senior Circuit Judge.

This forfeiture proceeding stems from the government's seizure of a total of $22,-287.00 from the person and from the house of Jesse Montez on March 6, 1980. The seizures followed an on-the-street narcotics

transaction between Montez and two undercover police officers in Saginaw, Michigan. Montez was convicted, before the same district judge, of federal narcotics violations prior to this forfeiture proceeding. *United States v. Montez,* No. 80–20013 (E.D.Mich. January 16, 1981), *aff'd. mem.,* 673 F.2d 1331 (6th Cir.1981).

The district court decided that, although the search warrant used to seize that part of the currency ($21,860) and other evidence in the house was issued in violation of certain provisions in Rule 41(c)(1), Fed.R. Crim.P., thus requiring, in the district court's view, the application of the exclusionary rule to the evidence obtained pursuant to the warrant, there was sufficient additional evidence to establish probable cause for the institution of the forfeiture proceeding. Because this finding shifted the burden to the claimant [1] to prove that the currency was not forfeitable as derivative contraband and because the claimant made no attempt to meet this burden at trial, the district court ordered all of the currency forfeited. We affirm, but by a different route than that of the district court.

The issues before us on appeal are: (1) whether the search warrant used to seize the currency and other evidence in Montez's home was valid under Rule 41, Fed.R. Crim.P. and the fourth amendment to the United States Constitution; (2) whether, if invalid only under Rule 41, the exclusionary rule applies to the seized items; and (3) whether the government, considering only the admissible evidence, showed probable cause to institute the forfeiture proceeding.

The facts are not disputed, and they have been summarized by the district court as follows:

> On March 6, 1980, Sergeant Melvin Turner of the Wayne County Sheriff's Department, using a fictitious identity, engaged in a telephone conversation with individuals at 1703 Infantry Street, Detroit, Michigan. One of the persons participating in that conversation was identified as "Jess" or "Jesse." During the conversation, heroin was not specifically mentioned, but statements were made concerning quantity and price which led Turner to believe that the parties on the line were offering to sell him an amount of heroin. A meeting location in Saginaw, Michigan was tentatively agreed to by Turner and Jesse.

> Sergeant Turner then contacted Special Agent James King of the Drug Enforcement Administration (DEA) who, in turn, contacted the Saginaw Police Department. The various law enforcement officers agreed to cooperate in investigating this matter.

> Later the same day, March 6, 1980, Sergeant Turner received a phone call from Jesse, on his undercover line, confirming a meeting location in Saginaw, Michigan, wherein Turner could test a sample of the substance which was to be the subject of the transaction. Jesse then gave Sergeant Turner a phone number where he could be reached upon Turner's arrival in Saginaw. Turner, acting on information provided by the Saginaw Police Department, then traced the phone number to the address of 3221 Harold Street, Saginaw, Michigan, the known residence of one "Jessie," a/k/a "Jesse Mandezs," a/k/a "Jesse Joe Mendoza." Turner, while still at his Detroit office, then prepared a search warrant and affidavit for the foregoing address and person.

> At approximately 7:30 P.M. that evening, Sergeant Turner met with Special Agent King and members of the Saginaw Police Department at a restaurant in Saginaw. Turner was then transported to the home of Judge Gary McDonald of the Saginaw County Circuit Court who signed the warrant which Turner had earlier prepared.

---

1. Attorney James E. Burns (claimant) has become the assignee of any interest Jesse Montez has in the seized currency. Claimant filed this appeal from the district court decision. The parties agree that, for purposes of this forfeiture proceeding, the claimant, Burns, stands in the shoes of his client, Montez.

At approximately 9:05 P.M. Sergeant Turner placed a phone call to Jesse and finalized plans for a meeting. Shortly thereafter Turner, accompanied by another undercover officer, drove to the location and met with an individual later identified as Jesse Montez, and acquired a substance later identified as heroin. Upon delivery of the heroin, Jesse Montez was arrested. An amount of $427.00 in U.S. currency was seized from his person at the time of the arrest. After being taken into custody, Montez was informed that a search warrant had been obtained for 3221 Harold Street, Saginaw, Michigan. He was then taken to that location.

The search warrant was executed by Special Agent King of the DEA, Sergeant Turner, and various members of the Detroit Metropolitan Narcotics Squad and the Saginaw Police Department. Pursuant to the warrant the officers seized $21,860.00 in U.S. currency, one plastic zip-lock bag containing a brown lumpy substance later determined to contain 3.5% heroin, two scales, and assorted firearms. Montez, who was present, stated that the seized currency was his money.

Following the search, all seized items were turned over to Special Agent King who later forwarded the suspected narcotics to the Chicago Regional Laboratory of the DEA.

Montez was tried in the United States District Court for the Eastern District of Michigan before a jury and convicted of conspiracy to violate the federal narcotics laws, 21 U.S.C. §§ 841(a)(1) and 846, and unlawful distribution of heroin. 21 U.S.C. § 841(a)(1) and (2). Montez was sentenced to twelve years imprisonment for his convictions. Since the convictions were based upon the sample of heroin delivered by Montez to Turner, and not upon the heroin seized from Montez's home along with the other evidence, the validity of the search warrant was not an issue in the criminal trial.

The government filed its forfeiture complaint on October 1, 1980, alleging that all of the seized currency was forfeitable pursuant to 21 U.S.C. § 881(a)(6).[2] The district court, before deciding whether the government had established probable cause to institute the forfeiture proceeding, in its memorandum opinion first addressed the question of the search warrant's validity. The court held that the search warrant was invalid because it had not been issued in compliance with four of the requirements of Rule 41(c)(1), Fed.R.Crim.P.:[3] (1) that the warrant be directed to a civil officer of the United States; (2) that the warrant provide a maximum time period of ten days; (3) that the warrant be served in the daytime (which the district court found was not done) unless a night search is authorized; and (4) that the warrant designate a federal magistrate to whom it shall be returned. While the government had argued that the search was solely a state search to which Rule 41(c)(1) would not be applicable, the court determined that it was applicable in view of the federal DEA officer's participation in the events before, during and

**2.** 21 U.S.C. § 881 provides, *inter alia:*
(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   \*   \*   \*   \*   \*   \*
   (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. . . .

**3.** Rule 41(c)(1) provides, *inter alia:*

The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States. It shall command the officer to search, within a specified period of time not to exceed 10 days, the person or place named for the property or person specified. The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. It shall designate a federal magistrate to whom it shall be returned.

after the search, relying on *United States v. Searp,* 586 F.2d 1117 (6th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979). Since the court determined that the currency seized at the house and the heroin and other items seized there were seized under an invalid search warrant, it applied the exclusionary rule and did not give these items (other than the *amount* of such currency) any evidentiary weight when deciding whether the currency must be forfeited. The court went on to find, however, that probable cause did exist for the forfeiture based upon "the government's independent evidence of probable cause that the currency was used for the purposes proscribed by 21 U.S.C. § 881(a)(6)...." *United States v. $22,-287.00 in U.S. Currency,* 520 F.Supp. 675, 679 (E.D.Mich.1981). This finding was based upon statements made by individuals at the Infantry Street address, while talking to Sergeant Turner on the telephone, which indicated that Jesse Montez had been recently involved in a drug transaction which provided him with a sum of money close to the amount seized from his apartment.[4]

Claimant now urges us to reverse the district court for three reasons. First, he argues that because the district court found the very seizure of the currency to be illegal, it should have concluded that for this reason alone the currency was not subject to forfeiture. Second, he argues that if the currency, although seized illegally, was subject to forfeiture, the district court should not have considered as evidence the *amount* of currency when determining whether there was sufficient independent evidence to support probable cause for the institution of the forfeiture proceeding. Third, claimant argues that the government did not by admissible evidence meet its burden of establishing that probable cause existed to institute the forfeiture proceeding.

Since we determine that the search warrant under which the currency and other evidence seized at Montez's home satisfied the fourth amendment and since we determine that, though the warrant did not satisfy the requirements of Rule 41(c)(1), the exclusionary rule should not be applied here, we further determine: (1) that the currency found in Montez's home was subject to forfeiture[5] and (2) that there was ample evidence to support probable cause to institute the forfeiture proceeding.

## II

■ The burden of proof in a forfeiture action is set forth in 19 U.S.C. § 1615, as incorporated by 21 U.S.C. § 881(d):

In all suits or actions ... brought for the forfeiture of any vessel, vehicle, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant.... *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court....

Thus, once the government has met its burden of showing probable cause to institute the forfeiture action, the burden then shifts to the claimant to show by a preponderance of the evidence that the property was not subject to forfeiture. In this action, claimant has attacked the sufficiency of the government's admissible evidence, but he has not introduced any evidence to show that the currency was not subject to forfeiture.

■ The probable cause which the government must show is: "a reasonable ground for belief of guilt, supported by less

---

4. The district court did not decide whether the search warrant satisfied fourth amendment requirements. Moreover, it implicitly assumed that the currency could be forfeited even if seized under a search warrant which did not comply with all the requirements of Rule 41(c).

5. We do not intend to infer that the currency found in Montez's home would, *ipso facto,* not be subject to forfeiture if it had been seized in violation of the fourth amendment or if the exclusionary rule were applicable because it was seized in violation of Rule 41(c)(1). In view of our holding here, we need not deal with such issues.

than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980); *United States v. One 1975 Mercedes 280S,* 590 F.2d 196 (6th Cir.1978). In making its probable cause showing, however, the government must also establish a nexus " 'between the property to be forfeited and the criminal activity defined by the statute;' i.e., the exchange of a controlled substance." *United States v. $364,960.00 in U.S. Currency,* 661 F.2d 319, 323 (5th Cir. 1981).

### III

■ In *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the Court held that search warrants should be interpreted "in a common-sense and realistic fashion," and that a "grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *Id.* at 108, 85 S.Ct. at 746. The Court further held that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 109, 85 S.Ct. at 746 (citation omitted).

Claimant argues that the affidavit for the warrant is insufficient because it identifies the person with whom the affiant, Sergeant Turner, dealt with on the telephone as "Jessie AKA Jesse Mandezs AKA Jessie Joe Mendoza," with date of birth 11–1C–52, when in fact the true name is Jesse Montez and the date of birth is incorrect. We fail to see how such error undercuts the effectiveness of the affidavit as showing the reasonableness of the expectation to find heroin at the house to be searched. Claimant also argues that the telephone number received by Turner to be used when he reached Saginaw in locating the seller of the heroin is not shown by the affidavit to be the telephone number of the location to be searched, that is, 3221 Harold Street. However, such is the clear inference from the affidavit since this Saginaw address is the only Saginaw address set out in the affidavit. Moreover, contrary to claimant's argument, the affidavit sets out reasons for believing that the heroin to be sold to Turner was located at that address. Lastly, although, as claimant points out, the affidavit does not affirmatively show how the telephone number received by Turner (752–3059 in Saginaw) was determined to be the number of a telephone located at 3221 Harold Street in Saginaw, the fact that such information is easily available to the public and particularly to law enforcement officers is too well known to require explication in the affidavit.

We therefore conclude that the search warrant satisfied the requirements of the fourth amendment.

### IV

■ As stated, the district court determined, relying on the decision of this court in *Searp,* that Rule 41(c)(1), Fed.R.Crim.P., applied to this warrant. It further held that the evidence seized at Montez's house must be suppressed since the warrant did not satisfy the Rule in that the warrant was not directed to a civil officer of the United States, did not contain a ten day limitation, did not require service in the daytime (which the district court found was not done) or show reasonable cause for and authorization for its service in the nighttime, and did not designate a federal magistrate to whom the warrant was to be returned.

This warrant and affidavit are on Michigan state forms. Moreover, the warrant was obtained by affidavit made by a state officer, Sergeant Turner, was issued by a state judge and alleges a state crime. On the other hand, Special Agent King of the DEA entered the investigation before the search warrant was obtained and also participated in the search and took custody of the heroin. Therefore, under the holding of this court in *Searp,* the requirements of Rule 41(c)(1) are applicable. 586 F.2d at 1121. However, as we read *Searp,* and particularly in light of its reliance on such cases as *United States v. Sellers,* 483 F.2d 37 (5th Cir.1973), *cert. denied,* 417 U.S. 908,

94 S.Ct. 2604, 41 L.Ed.2d 212 (1974), and *United States v. Burke,* 517 F.2d 377 (2d Cir.1975), we conclude that the exclusionary rule should not be applied.

In *Searp,* where the warrant was obtained by a state officer from a state judge and alleged a state crime but where agents of the FBI had cooperated in the investigation and search, this court held Rule 41(c)(1) to be applicable. This court, however, refused to apply the exclusionary rule, even though the search was conducted in the nighttime and the affidavit did not show reasonable cause for nighttime service and the warrant did not authorize such service. This court refused to apply the exclusionary rule because under the circumstances presented it was clear that a nighttime search was reasonable and would have been authorized if such had been sought.[6]

In reaching this result, this court said in *Searp:*

> In so deciding, we follow the lead of the Second Circuit, *United States v. Burke,* 517 F.2d 377 (2d Cir.1975), which held:
>
>> [V]iolations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

586 F.2d at 1125.

In *Sellers,* also relied upon by this court in *Searp,* it is not absolutely clear whether the Fifth Circuit held that, in circumstances such as those presented here, Rule 41(c)(1) is simply inapplicable, or whether it held that, though generally applicable, certain requirements, such as the requirement that the warrant be directed to a civil officer of the United States, are not applicable. 483 F.2d at 43–44.

In any event, applying the rationale of *Searp, Burke* and *Sellers,* we conclude that the evidence obtained pursuant to this search warrant should not have been excluded. Certainly with respect to the warrant's failure to satisfy Rule 41(c)(1) in not being directed to a civil officer of the United States, in failing to contain a ten day limitation, and in failing to designate a federal magistrate to whom it shall be returned, there was no "prejudice" to Montez or evidence of a deliberate disregard of the Rule. As to the ten day limitation, it is clear and was clear when the warrant was issued that the officers intended to serve the warrant shortly thereafter. It in fact was served shortly thereafter. With respect to the requirement of the Rule as to nighttime service, more discussion is required.

Under Rule 41(h), Fed.R.Crim.P., "daytime" is defined as the local hours from 6 a.m. to 10 p.m., and we therefore infer that "nighttime" is from 10 p.m. to 6 a.m.

As stated, the district court determined that the search warrant was served in the nighttime, a finding that, the government contends, is not supported by the record. We need not resolve this controversy because it is abundantly clear that, if this warrant was in fact served after 10 p.m., it was very shortly thereafter and because, in our view, under the circumstances presented here the exclusionary rule should not be applied even if it was served shortly after the termination of "daytime" as defined in Rule 41(h).

The record reflects that the planned rendezvous between Sergeant Turner and Montez for delivery of the sample of heroin occurred in Saginaw at about 9:05 p.m., that the arrest of Montez was made almost immediately thereafter, and that the officers then proceeded directly to the house at 3221 Harold Street in Saginaw and carried out the search pursuant to the warrant.

---

**6.** It should be noted that in *Searp* Judge Merritt concurred only in the result. His view was that Rule 41(c)(1) was not applicable at all under the circumstances presented but that, if such Rule were applicable, he would apply the exclusionary rule and suppress the evidence.

Judge Merritt has authorized the court to state that he concurs in both the result and the reasoning of this opinion because he believes the court to be bound by *United States v. Searp.* He still believes, however, that his separate opinion in *Searp* states the better rule.

Therefore, it is clear that if the search began after 10 p.m., it certainly was very shortly after that time.

The record also reflects that Sergeant Turner had reason to believe that he would be able to meet Montez, effect his arrest upon delivery of the sample, and proceed to execute the search of the house within a short time after issuance of the search warrant. The warrant was apparently issued by the state judge shortly after the officers met at a restaurant in Saginaw at 7:30 p.m. Thus, Turner had reason to believe that the search warrant would be executed before 10 p.m.

Further, Turner had reason to believe, based on the conversation he had with Montez, that Montez operated on a first come, first serve basis in supplying heroin to customers and that Montez enjoyed a rapid turnover of his heroin after he acquired it for resale. Thus, Turner, when he obtained the search warrant, had reason to believe that the supply of heroin that Montez had indicated would be available at Saginaw would be otherwise disposed of if it was not seized as soon as feasible.

Lastly, the record does not reflect that the search, as actually carried out in Montez's house in Saginaw, was in any sense "abrasive" except to the extent that any search that turns up heroin is "abrasive." There is no evidence that the search would have been less "abrasive" if it had occurred before 10 p.m.

We therefore conclude that the exclusionary rule should not have been applied to the facts of this search at Montez's house because: (1) if the search did actually begin in the "nighttime," it was so soon after 10 p.m. as to make the infraction *de minimis;* (2) there was a reasonable basis for a nighttime search if such had been expressly sought; (3) there is no indication that the search would have been less "abrasive" if it had been carried out shortly before 10 p.m.; and (4) there is no evidence of an intentional or deliberate disregard of the requirements of Rule 41(c)(1).

V

Having determined that the exclusionary rule should not have been applied to the evidence obtained at Montez's house, it is clear that the evidence abundantly supported the government's contention that there was probable cause to institute the forfeiture proceeding as to the $22,287.00 in currency found in the house and on Montez's person. The telephone conversations between Turner and Montez concerning a recent drug transaction by Montez, together with the amount of currency, the quantity of heroin, the scales and the firearms found in the house, support the result reached by the district court as to the currency declared forfeited. *United States v. $364,960 In U.S. Currency,* 661 F.2d at 325.

The judgment of the district court is, accordingly, Affirmed.