1 F.3d 1242
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
CERTAIN REAL PROPERTY AT 14307 FOUR LAKES DRIVE, STERLING
HEIGHTS, MICHIGAN, Together with all Improvements,
Fixtures and Appurtenances, Defendant,
Floyd Varney, Claimant-Appellant.
 
 No. 92-1585.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1993.
 Before KENNEDY and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant-Appellant Floyd Varney appeals from the judgment of the District Court forfeiting to the United States his residence at 14307 Four Lakes Drive, Sterling Heights, Michigan. The property was seized pursuant to 21 U.S.C. Sec. 881(a)(7) on the ground that it had been used to facilitate illegal narcotics trafficking, and pursuant to 18 U.S.C. Sec. 1955 on the ground that it was the situs for an illegal gambling operation. Varney, the record owner of the residence, claims to qualify under section 881(a)(7)'s exception to forfeiture for owners who lack knowledge of, or do not consent to, criminal activity involving the property. On appeal, Varney argues that the forfeiture judgments must be reversed because (1) the District Court applied an erroneous standard in determining whether claimant established an "innocent owner" defense to the forfeiture action and (2) the District Court erred in finding probable cause to believe that defendant property was involved in an illegal gambling operation with five or more people. For the reasons set forth below, we affirm.
 
 I.
 
 2
 The record before the District Court disclosed the following as the probable cause for the seizure. On February 28, 1991, undercover police officer Jeffrey Pierog of the Warren, Michigan police department was contacted by one Jason Heck regarding a marijuana purchase. Officer Pierog then met with Heck who instructed Pierog to drive to the defendant Four Lakes street property in order to get the drugs. When they arrived at the defendant property, claimant's cadillac was in the driveway. Heck went into the house while officer Pierog waited outside in the car. While in the house, Heck received one-half ounce of marijuana from Sean Varney, claimant's son, which he then sold to officer Pierog. This same type of transaction occurred on two other occasions. On March 7, 1991, Pierog again went with Heck to the defendant property. Heck sold Pierog one-quarter pound of marijuana that he received from Sean Varney. Claimant acknowledged being at the residence during this transaction. Joint App. at 380.
 
 
 3
 On March 14, 1991, Sean Varney again sold one-quarter pound of marijuana to officer Pierog through Heck. While officer Pierog was waiting in the driveway, claimant drove up to the house. The same day, local law enforcement officials obtained a State of Michigan search warrant for drugs and related items at defendant residence. Officers of the Warren and Sterling Heights Police Department executed the warrant that same night. Marijuana, drug paraphernalia, and some of the prerecorded "buy money" were found in Sean Varney's bedroom. Drugs and paraphernalia were also found in plain view in the basement. Neither the basement nor the bedroom doors had locks. The basement walls, as well as the closet and bedroom doors of claimant's sons, were spray painted and otherwise covered with posters and graffiti advocating marijuana use, legalization of marijuana and the use of "crack" cocaine.
 
 
 4
 During the search, the officers encountered an individual named John Weir who was on the telephone taking and tape recording bets. Weir was carrying a handgun and he admitted to officers that he used the telephone line at defendant property to conduct gambling activities with claimant and had done so for three to four years on a regular basis. The officers also found, in plain view in the den, numerous gambling documents, such as "spread" sheets and wagering tallies. The den had multiple telephone lines and four television sets. All in all, the officers seized from the den of the defendant property the following:
 
 
 5
 (a) four color television sets, each hooked up to a satellite dish;
 
 
 6
 (b) five VCR's, all of which were attached or connected to the TV's and which had recorded or were recording sporting events;
 
 
 7
 (c) telephones and calculators;
 
 
 8
 (d) gambling records consisting of betting records on yellow legal pads; "point spread" sheets; a rolodex telephone file; adding machine tapes; a cassette tape recording with gambling information; a binder containing betting spread sheets; and an "IVI privacy protector" designed for attachment to a telephone;
 
 
 9
 (e) a Michigan Bell Telephone bill for December 1989-January 1990, listing 237 unit calls and 13 long distance calls; and
 
 
 10
 (f) a "SportsFax News Network" multi-page fax containing betting information.
 
 
 11
 Joint App. at 25-26. Thereafter, claimant was charged in state court with conspiracy to gamble in violation of Michigan law and claimant's adult son, Sean Varney, pled guilty in state court to two counts of delivery of marijuana.
 
 
 12
 In January of 1992, approximately nine months after the execution of the first state search warrant and after the filing of the government's forfeiture complaint, local law enforcement officers made an undercover drug buy from Sean Varney at the defendant property. Within 36 hours prior to March 5, 1992, the officers made another drug buy. Then, on March 5, 1992, a second search warrant was executed at the defendant residence. Again, marijuana and drug paraphernalia were found in Sean Varney's bedroom and in plain view in the basement.[1] Claimant had over $3,000 in his safe and officers also found a shotgun.
 
 
 13
 During the course of a two-day bench trial, held March 10 and 11, 1992, the District Court found that the government established probable cause for forfeiture of the residence under both the drug and gambling statutes and that the claimant had failed to establish a meritorious defense to forfeiture. Consequently, on March 19, 1992, the District Court ordered defendant property forfeited to the United States. This timely appeal followed.
 
 II. The Forfeiture Statute
 
 14
 21 U.S.C. Sec. 881 provides for forfeiture of property used to facilitate illegal acts. Section 881(a)(7) deals specifically with the forfeiture of real property. Such property shall be subject to forfeiture if it,
 
 
 15
 is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 16
 The structure of a section 881 forfeiture proceeding is well settled by statute and case law. Specifically, forfeiture actions under section 881 are governed by the procedures found in 19 U.S.C. Sec. 1615. The government has the initial burden of showing probable cause to institute the forfeiture action. 19 U.S.C. Sec. 1615; United States v. Twenty-Two Thousand, Two Hundred Eighty Seven Dollars ($22,287.00), United States Currency, 709 F.2d 442, 446 (6th Cir.1983). The trial court bears the responsibility for determining whether the government has proven probable cause. 19 U.S.C. Sec. 1615. The government must convince the judge that it had "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." $22,287.00, United States Currency, 709 F.2d at 446 (quoting United States v. One 1978 Chevrolet Impala, 614 F.2d 983, 984 (5th Cir.1980)). Once probable cause is established, the burden then shifts to the claimant to show by a preponderance of the evidence a defense to the forfeiture. Id. It is a statutory requirement that the claimant, and not the government, bear the burden of proving an "innocent owner" defense. 19 U.S.C. Sec. 1615. The question of whether a claimant has sufficiently established an innocent owner defense is a question of fact to be determined by the fact finder, in this case the District Court. United States v. One Parcel of Real Estate at 1210 Germantown Road, 963 F.2d 1496, 1501 (11th Cir.1992); United States v. Real Property Located at Section 18, 976 F.2d 515, 520 (9th Cir.1992) ("Findings of fact of the district court in forfeiture cases tried to the court must be affirmed unless clearly erroneous."); United States v. One 1963 Cadillac Convertible Coupe, 352 F.2d 338 (6th Cir.1965) (recognizing that forfeiture actions are subject to the Federal Rules of Civil Procedure and therefore the district judge's findings of fact may not be set aside unless clearly erroneous).
 
 III. The Innocent Owner Defense
 
 17
 The District Court ruled as a matter of law that the government met its initial burden of establishing probable cause to believe the defendant residence was used to facilitate narcotics distribution. The burden thus shifted to claimant to prove either that the residence was not used as alleged or that the drug activity took place without his knowledge or consent. 21 U.S.C. Sec. 881(a)(7). Claimant does not contest that the drug activity took place, rather he asserts the "innocent owner" defense. Claimant contends that in order to establish the innocent owner defense under section 881(a)(7) he need only show the illegal activity occurred without his "knowledge or consent," and therefore, the District Court erred in applying a standard of "willful blindness."
 
 
 18
 In its decision finding the property subject to forfeiture, the District Court referred to the concept of "willful blindness" and defined it as the "conscious tort of deliberate ignorance that's meant to be imposed when a defendant refuses to take basic investigatory steps." Joint App. at 399. The District Court also found, however, that claimant had actual knowledge of the illegal drug activity taking place at his residence. Specifically, the court stated:
 
 
 19
 I simply cannot find on this record that Floyd Varney did not know what was going on his house. And if he was closing his eyes so if confronted with what he finds himself in today he could say I didn't know, that won't save him, nor will it save the house.
 
 
 20
 Joint App. at 399-400 (emphasis added). The court further stated that "we had a fully-informed claimant who permitted both gambling, illegal gambling, and drug activity that continued in his house." Joint App. at 401. Taking the record as a whole, we cannot say that this finding is clearly erroneous.
 
 
 21
 Having concluded that claimant had actual knowledge, the Court must now consider whether claimant has demonstrated a lack of consent to the narcotics-related activity occurring at his residence.[2] A threshold question arises as to what exactly the consent prong of the section 881(a)(7) innocent ownership defense requires the alleged innocent owner to prove. In Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 689 (1974), the Supreme Court noted, in dictum, that it might be unconstitutional to forfeit the property "of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property...." This Court has held, however, that in cases involving 21 U.S.C. Sec. 881(a)(7), the Calero-Toledo "reasonable efforts requirement" should not be imported into the consent component of the statutory innocent owner defense. In United States v. Lots 12, 13, 14, and 15, Keeton Heights, 869 F.2d 942, 947 (6th Cir.1989), this Court stated that:
 
 
 22
 The constitutional question is not presented here, because the statute with which we are concerned [section 881(a)(7) ] imposes no requirement that a person who claims the status of an "innocent owner" establish that he has done all that he could reasonably be expected to do to prevent the proscribed use of the property. It is enough, under the statute, that the owner establish that the proscribed act was committed "without the knowledge or consent of that owner."
 
 
 23
 While claimant does not carry the burden of establishing he did all in his power to prevent his son's illegal drug activity (occurring at his home), there is no factual support in the record demonstrating that claimant objected to, or even took the slightest steps possible to prevent the known crimes from continuing. It is clear that claimant made no effort to prevent the storage, use or sale of drugs on the premises. When local law enforcement officials conducted the second search of claimant's residence, only nine months after the first search, they again found marijuana and drug paraphernalia in various locations throughout the house. Claimant's son continued to sell drugs out of claimant's home while claimant was present. Several of the drug-related items were found in plain view in the basement. It is undisputed that neither the basement nor claimant's son's bedroom had any locks impeding claimant's access to these rooms, and claimant has presented no evidence that his son's room was "off limits." Consequently, claimant's contention that he did not consent, standing alone, is insufficient to support his defense of innocent ownership.
 
 IV. The Gambling Statute
 
 24
 The defendant property is also forfeitable under 18 U.S.C. Sec. 1955.[3] Section 1955(d) provides that "[a]ny property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States." This provision also defines the specific "elements" necessary to support a gambling forfeiture:
 
 
 25
 (1) The "illegal gambling business" must be a violation of the law of a state or political subdivision in which it is conducted;
 
 
 26
 (2) The "illegal gambling business" involves five or more persons who conduct, finance, manage, supervise, direct or own all or part of such business; and
 
 
 27
 (3) The "illegal gambling business" has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
 
 
 28
 18 U.S.C. Sec. 1955(b). Claimant contends that the District Court erred in finding probable cause to believe that five or more persons were involved in conducting an illegal gambling operation out of the defendant property.
 
 
 29
 During the execution of the 1991 search warrant, local law enforcement officials encountered John Weir who was on the telephone in claimant's den taking bets. Weir admitted to officers that he took wagers for claimant at defendant property. Joint App. at 133. The officers also seized numerous illegal gambling documents and video-equipment from claimant's residence. Thus, John Weir and claimant Floyd Varney were clearly involved in a gambling operation being run at the defendant property. In addition to the documents and equipment seized, police officers also seized an audio cassette tape which implicates at least three other people in the gambling operation.[4] Specifically, the tape indicated that a "Mr. Mark Sabo" took numerous wagers from claimant and John Weir and that "Tiger" and his wife took bets for the claimant. The government also presented evidence that an individual named "Steve" secured bets for claimant's gambling business and collected money from bettors on behalf of claimant, and that an individual named "George" took numerous bets for claimant, collected money from other people and funneled that gambling money to claimant.
 
 
 30
 After listening to the cassette tape, as well as the testimony regarding the gambling documents and equipment seized from claimant's home, the District Court found probable cause existed to believe all of the elements of section 1955 were present. Despite claimant's contention that the voices on the cassette tape are "inaudible, garbled and confusing," the District Court stated:
 
 
 31
 I find on the record that there is illegal gambling on the premises. That tape, as I hear your [claimant's] argument, can't be the same one I listened to. I had no problem hearing the tape when I really concentrated. And it's clear from the tape that there are more than five persons involved in illegal, ongoing gambling. I learned a great deal about horse racing, football betting, spreads, and all kinds of interesting things on that tape. If you heard the one I did, [claimant's] counsel, I don't believe you'd have to struggle too long with whether they were addressing the fact of gambling and whether or not there were five or more persons involved in this.
 
 
 32
 Joint App. at 397. The court also found that the gambling documents seized from the defendant property demonstrated that the illegal gambling activity "went on for more than 30 days." Joint App. at 398. Upon review of the record and after listening to the tape, we find that the District Court did not err in finding probable cause to forfeit claimant's residence under 18 U.S.C. Sec. 1955. As claimant has presented no evidence to refute or rebut the conversations on the audio tape,[5] the judgment of forfeiture was properly entered.
 
 V.
 
 33
 For the aforementioned reasons, the order of the District Court forfeiting claimant's property to the United States is AFFIRMED.
 
 
 
 [1]
 Specifically, law enforcement officers recovered marijuana in the bedroom of Christopher Varney (claimant's 16 year old son); betting records and cigarette rolling papers in the top dresser drawer of Sean Varney's bedroom; three yellow legal pad sheets with gambling information from the trunk of claimant's car; betting books and records in the den and in claimant's bedroom; a metal balance scale, part of a marijuana cigarette and an envelope of marijuana from a table top in the basement; and prerecorded funds from Sean Varney. Joint App. at 55
 
 
 [2]
 The Circuits are split on the issue of whether Sec. 881(a)(7) requires a claimant to show the lack of both knowledge and consent, or simply the lack of one or the other. Several of this Court's (unpublished) opinions make clear that either ignorance or non-consent will suffice to make out an innocent owner defense
 
 
 [3]
 This statute, prohibiting illegal gambling businesses, provides that "[w]hoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both." 18 U.S.C. Sec. 1955
 
 
 [4]
 The bets which were taken in at defendant property were tape recorded over the phone. Joint App. at 141
 
 
 [5]
 On March 4, 1992, the United States and claimant stipulated to entry of an order which precluded claimant himself from testifying at trial with respect to gambling activities