**UNITED STATES of America, Plaintiff,**

**v.**

**FIFTY THREE THOUSAND EIGHTY-TWO DOLLARS IN U.S. CURRENCY, $53,082.00, Defendant.**

**No. 89–70417.**

United States District Court, E.D. Michigan, S.D.

Sept. 13, 1991.

William J. Sauget, Asst. U.S. Atty., E.D. Mich., Southern Div., Detroit, Mich., for plaintiff U.S.

Charles H. Brown, Detroit, Mich., for defendant $53,082.00.

MEMORANDUM OPINION AND ORDER DENYING THE GOVERNMENT'S 18 MARCH 1991 MOTION FOR SUMMARY JUDGMENT AND GRANTING CLAIMANTS' 17 MAY 1991 MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

### FACTS

On 6 May 1988 the claimants, Gregory Brunson and Willie Dixon were observed at Detroit Metropolitan Airport by Agents David Gentry and L. Ray Denton. Both agents were local police officers assigned to a special Drug Enforcement Administration Task Force. The agents initiated police-citizen contact with the claimants, who were seated in the American Airlines Gate B–7 area. The agents identified themselves and asked the claimants if they could speak with them. The claimants provided the agents, upon the agents' request, with their plane tickets and identification. Each claimant consented to a search of his carry-on bag.

Each claimant stated, in response to further questioning, that he was carrying about $20,000.–$25,000. in currency. *See* Denton Dep. at p. 45, line 13 to p. 46, line 1; Gentry Decl. at p. 3, paragraph 9. Claimant Dixon revealed the currency to Agent Denton upon request. *See* Denton Dep. at p. 46, line 18 to p. 48, line 19. Claimant Dixon was carrying the money in his socks. At this point Agent Gentry made the following declaration:

9. .... I overheard Mr. Brunson's companion, Mr. Dixon, advise Task Force Agent ("TFA") Denton that he was carrying $25,000 in cash in his socks. I asked Mr. Brunson whether he was carrying a large amount of cash. Mr. Brunson told me that he had $20,000 in cash in his socks. He stated that he did not trust banks and this was why he was carrying the money. Mr. Brunson indicated (apparently in response to further questioning by Agent Gentry) that he did not want to pull up his pant legs to show me the money in front of all the people in the airline gate area. I asked Mr. Brun-

son if he would prefer to move to a more private area and he stated that he would.

10. Mr. Brunson, Mr. Dixon, TFA Denton and I got up from our seats and began walking toward the main ticket counters. Neither TFA Denton nor I took Mr. Dixon or Mr. Brunson by the arm or had any physical contact with them as we were walking. In fact, I believe that Mr. Dixon walked behind me and was beside TFA Denton. Neither TFA Denton nor I had possession of Mr. Brunson's or Mr. Dixon's identification, ticket or belongings.

Gentry Declaration at pp. 3–4, paragraphs 9–10. Shortly thereafter, the claimants and the agents arrived at the agents' office at the airport.

Upon the agents' request, the claimants turned the money over to the agents. *See* Denton Dep. at p. 62, lines 10–15. After some further questioning regarding the money, Agent Denton "told them (the claimants) that we were going to subject the money to a dog sniff." Denton Dep. at p. 66, lines 19–20. The dog utilized in the sniff alerted to the currency. The claimants were told that the money was being seized and gave them a receipt for the money.

On 18 March 1991, the government filed a motion for summary judgment. Claimants responded on 1 May 1991. On 17 May 1991, claimants filed a cross-motion for summary judgment. The government did not respond to this motion. Pursuant to local rule 17(*l*)(2) no oral argument was heard. Having reviewed the briefs and being otherwise familiar in the premises, the court will dispose of both motions by the following written opinion.

## CONTENTIONS

The government contends that summary judgment is proper on two grounds. First, the government contends that claimants have no standing to contest the forfeiture. Second, the government contends that there has already been a finding of probable cause in an earlier related matter [1] and that because the claimants have invoked their Fifth Amendment right against self-incrimination, the claimants are incapable of establishing that the money was not used or intended to be used in an illegal narcotics transaction; thus, there is no need for a trial.

The claimants contend that they have standing by virtue of their possession of the defendant currency. They contend that they were seized in violation of their Fourth Amendment rights and that, therefore, the defendant currency cannot be forfeited.

## SUMMARY

For the reasons stated below the court finds that the claimants have standing to contest the forfeiture. Further, the court need not reach the issue of whether claimants themselves were unreasonably seized because the court finds that the defendant currency was seized in violation of the Fourth Amendment and, therefore, that it cannot be forfeited. In the alternative, the court holds that the government did not have probable cause to believe the money was proceeds of an illegal narcotics transaction.

## ANALYSIS

### I. Standard Of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes

---

1. In *Brunson v. United States,* Case No. 88–72465, 1988 WL 241121 (E.D.Mich.1988) (Hon. Ralph M. Freeman) the claimant brought action against the government and the particular agents involved for improper seizure and retention of their property. In a memorandum opinion issued 22 November 1988, Judge Freeman found the claimants had failed to follow the procedure set forth in Title 28, CFR, §§ 9.1–9.7. Accordingly, the matter was dismissed on 17 January 1989, and the claimants were advised to follow the appropriate procedure within twenty (20) days of the entry of the memorandum opinion.

grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties. [Citation omitted]. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511. (Citations omitted); *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## II. Standing

█ Courts "have recognized that a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 326 (5th Cir.1981). In *United States v. Wright*, 610 F.2d 930, 939 (D.C.Cir.1979) the court rejected precisely the argument advanced by the government in the instant matter and held that possession was sufficient for standing purposes unless serious doubts are raised about a claimant's entitlement to money seized from him.

In the instant matter, the government has raised no such serious doubts. On the contrary, the government admits that when claimant Dixon was questioned by Agent Denton about the money that he responded that the money "was part of his (claimant Dixon's) and part of Mr. Brunson's." Denton Dep. at p. 51, line 17. Accordingly, the court holds that the claimants have standing to contest the forfeiture by virtue of their possession of the defendant currency at the time of forfeiture. Because claimants established their standing as a result of their status as possessors of the currency, their standing is not affected by their invocation of the Fifth Amendment right against self-incrimination.

### III. Search of Currency

■ With respect to the issue of whether the dog sniff of the money was a search, the court holds that it was not. As the Court stated in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110, (1983)

> the manner in which information is obtained through [a dog-sniff] is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item ... This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

> \*　\*　\*　\*　\*　\*

> We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

*Place*, 462 U.S. at 707, 103 S.Ct. at 2644–45. In the instant case, the claimants had already delivered possession of the defendant currency to the agents. As with the luggage in *Place*, the sniff revealed only the presence or absence of narcotics residue. Thus, the court holds that the sniff of the defendant currency, already in the possession of the agents, was not a "search" within the meaning of the Fourth Amendment.

### IV. Seizure of the Currency

■ The Supreme Court of the United States has defined a seizure of property as "some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

In *Place*, the Court examined "whether the Fourth Amendment prohibits law enforcement authorities from temporarily detaining personal luggage for exposure to a trained narcotics detection dog on the basis of reasonable suspicion that the luggage contains narcotics." 462 U.S. at 698, 103 S.Ct. at 2639. The Court, while concluding that the sniff was not a search, went on the reason that there was undoubtedly a seizure of the defendant's luggage when it was taken *from his custody* in order to arrange exposure to a narcotics detection dog. *Id.* at 707–09, 103 S.Ct. at 2944–46.

*United States v. Lovell*, 849 F.2d 910, 913–14 (5th Cir.1988) (footnote omitted) (emphasis in original). Even assuming, *arguendo*, that in the instant case the claimants delivered possession of the defendant currency to the agents voluntarily, when Agent Denton *told* the claimants that the currency would be "subject to a dog sniff," Denton Dep. at p. 66, lines 19–20, the agents had seized the currency. Telling the claimants that the currency would be subject to a dog sniff was a meaningful interference with the claimants' possessory interest in the currency. Thus, the court holds that the agents seized the currency at the time agent Denton informed the claimants that the money would be subject to a dog sniff.

### V. Reasonableness of Seizure

#### A. Generally

The court must now determine if the seizure was reasonable. If so, the seizure does not run afoul of the Fourth Amendment. If not reasonable, the seizure was in violation of the Fourth Amendment. If the seizure of the currency was in violation of the Fourth Amendment, the results of the dog sniff must be excluded. "Because forfeiture proceedings are quasi-criminal in character and meant to penalize the commission of an offense against the law, the exclusionary rule applies to such proceedings, barring evidence obtained in violation of the fourth amendment." *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 448 (9th Cir.1983).

"In the ordinary case, the Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983) (footnote omitted). In *Place*, the Court

> conclude[d] that when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope.

*Place*, 462 U.S. at 706, 103 S.Ct. at 2644. The court must determine whether the *Place* analysis obtains to the case at bar.

### B. Under Place

Pursuant to the authority of *Place*, this court is required to

> balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion. When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests (if significant) can support a seizure based on less than probable cause.

*Place*, 462 U.S. at 703, 103 S.Ct. at 2642. As the Court noted in *Place*, "[t]he intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent.... seizures of property can vary in intrusiveness...." *Place*, 462 U.S. at 705, 103 S.Ct. at 2643. Further, as Justice Brennan noted in his concurrence in *Place*,

> [i]n *Dunaway v. New York*, 442 U.S. 200, 60 L.Ed.2d 824, 99 S.Ct. 2248 (1979), the court stated that "[t]he *narrow intrusions* involved in [*Terry* and its progeny] were judged by a balancing test rather than by the long-prevailing standards of probable cause ... only because these

intrusions fell far short of the kind of intrusion associated with an arrest.

*Place*, 462 U.S. at 718, 103 S.Ct. at 2650 (Brennan, J., concurring) (emphasis supplied). Finally, as the Court concluded in *Place*, "if the investigative procedure is itself a search requiring probable cause, the initial seizure of respondent's luggage for the purpose of subjecting it to the sniff test—no matter how brief—could not be justified on less than probable cause." *Place*, 462 U.S. at 706, 103 S.Ct. at 2644. Thus, whether the *Place* exception obtains in the instant case depends on the nature and extent of the seizure, the weight of the law enforcement interests, and whether the investigative procedure is a search.

Under a *Place* type analysis, there are three separate bases for determining that less than probable cause is sufficient to justify the intrusion. First, the nature and extent of the seizure might compel a conclusion that nothing less than probable cause would ever be sufficient to justify the intrusion regardless of the law enforcement interests. Second, the balance of the nature and extent of the seizure against the weight of the law enforcement interest might result in the conclusion that less than probable cause would be insufficient to justify the intrusion. Third, if the purpose of the seizure was to arrange a procedure which is a search, the seizure "could not be justified on less than probable cause." *Place*, 462 U.S. at 706, 103 S.Ct. at 2644.

#### i. *Extent of Seizure*

■ One parameter of intrusiveness, extent, corresponds to the length of time the property is seized and both the distance of the place to which the property is removed as well as the possessor's knowledge of the place to which the property is removed. Thus, the least intrusive seizure, with respect to the extent of the seizure, under the analysis in *Place*, is where the seizure lasts only for a moment and the seized property remains in the immediate proximity of the possessor.

A sniff of currency being carried in one's pockets, or for that matter one's socks, can

be accomplished as quickly and as closely to the possessor of the currency as a sniff of one's luggage. Therefore, assuming the possessor of the seized property has voluntarily delivered possession of the property to law enforcement agents prior to its seizure, a sniff of the property is no less intrusive, with respect to the extent of the seizure, than the sniff of luggage approved in *Place*. The court holds that the sniff of the defendant currency was accomplished in sufficient proximity to the claimant possessors and with sufficient expedience so that it was no more intrusive in extent than the seizure in *Place*.

### ii. *Nature of Seizure*

With respect to the privacy interests implicated, the court finds that the seizure of the defendant currency is substantially more intrusive than the seizure of the luggage approved of in *Place*. Obviously, the privacy interests in luggage are of a different order than the privacy interests in personal effects carried on the person. First, luggage is routinely x-rayed as part of airport security. Second, with respect to the luggage itself, as opposed to its contents, the person's possession of the luggage is open and public. One need only observe a person to determine whether he is in custody of luggage. Personal effects, however, are concealed on the possessor's person. Thus, such personal effects must be accorded a higher level of privacy interest than is accorded luggage.

Under normal circumstances, the level of privacy interest in personal effects carried on the person is not relevant because such items cannot be seized absent a constitutionally justifiable search of the person. Once property is discovered as a result of the search of the person, that property may be seized if probable cause to seize exists. For example, if, pursuant to a validly issued arrest warrant based on probable cause that the arrestee is selling illegal narcotics, law enforcement agents discover large amounts of currency on the arrestee's person, such currency would properly be deemed to have been discovered pursuant to a validly executed arrest warrant and probable cause existed to seize it.

■ In the case at bar, however, the agents discovered the existence of the defendant currency through questioning and initially obtained possession of it simply by asking. The court holds that by telling the agents, in response to the agents' questions, that they were carrying the defendant currency and by delivering possession of the defendant currency to the agents, the claimants were not abandoning whatever privacy interests they had in the defendant currency. Obviously, the claimants were carrying the defendant currency in their socks because they wanted their possession of the defendant currency to remain private. Claimants answered the agents' questions about the money and delivered possession of the currency to the agents, in part, because they were urged to do so by the agents.

By doing so, the claimants did not sacrifice their privacy interest in the currency. There is no reason to expect citizens who want to maintain privacy interests in personal effects carried on their persons to lie about whether they possess the property in question when asked by law enforcement agents. Further, there is no reason to expect citizens who want to maintain privacy interests in personal effects carried on their person to refuse to allow a law enforcement agent to observe the property after the citizens have admitted possessing the property in question. On the other hand, a citizen could not consent to a search or seizure of personal effects carried on his person and expect to maintain his privacy interest in the property seized or searched.

Consent to search or seizure of personal effects carried on the person is obviously inconsistent with an expectation of privacy. Identifying property carried on the person or voluntarily allowing law enforcement agents to temporarily possess or observe the property is not inconsistent with an expectation of privacy. Moreover, it is consistent with a desire to cooperate with law enforcement officials. Accordingly, the court holds that the intrusiveness of the seizure under the privacy interest component of the *Place* analysis is tantamount to

the intrusiveness of a seizure of the personal effects directly from the person of the claimants. The court further holds that such a seizure could never be justified under the *Place* analysis by less than probable cause because, unlike the seizure of luggage, the seizure of personal effects carried on the person is one of the most intrusive types of property seizures, regardless of the extent of the seizure.

### iii. *Law Enforcement Interests*

Alternatively, the court holds that the balance of the law enforcement interests against the intrusiveness of the seizure in the case at bar would not justify less than probable cause to justify the seizure. Assuming, *arguendo*, that *Place* did obtain in the instant case, the court would hold that the agents did not have the reasonable suspicion necessary to justify seizure of the defendant currency. Accordingly, summary judgment will be granted for claimants, Gregory Brunson and Willie Dixon.

### VI. *Probable Cause to Forfeit the Currency*

Assuming, *arguendo*, that the seizure of the defendant currency was permissible, the court holds that the government did not have probable cause to forfeit the currency under 21 U.S.C. § 881(a)(6).

■■■ In order to sustain a forfeiture, the government must demonstrate that it had probable cause to believe that the currency was received in exchange for controlled substances. *See e.g., United States v. One 1979 Porsche Coupe*, 709 F.2d 1424 (11th Cir.1983). Once the government has demonstrated probable cause, the burden then shifts to the claimant to prove by a preponderance of the evidence why forfeiture should not occur. *United States v. One 56 Foot Yacht*, 702 F.2d 1276 (9th Cir.1983).

■■■ The government claims Judge Freeman already made a determination that probable cause existed and that the determination is binding on this court. Claimants contend that it is clear that Judge Freeman was not addressing the issue of probable cause and that the statement was

incidental and of no substantive impact. The court agrees with claimants.

After detailing the facts leading up to the seizure of the currency, Judge Freeman goes on to say that "[d]efendants then seized all the currency based, on probable cause pursuant to 21 U.S.C. § 881(a)(6)...." 22 November 1988 memorandum opinion. The statement regarding probable cause merely describes the authority under which the currency was seized. Nothing about the language suggests that it is a finding that probable cause did in fact exist. Accordingly, the court will address the probable cause issue on a clean slate.

Probable cause "requires the court to 'make a practical, common-sense decision whether, given all the circumstances set forth ... including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that the properties to be forfeited are the proceeds of illegal drug transactions.'" *United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir.1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

■■■ The government's probable cause in the instant matter is based on a number of factors. The most significant of these factors are as follows:

1. The claimants did not have baggage receipts;

2. The claimants had purchased their tickets with cash;

3. The claimants were carrying in excess of $20,000 each in their socks;

4. The claimants did not provide the agents with a satisfactory explanation as to how they came by such a large sum of money or what they intended to use it for.

5. The claimants were going to El Paso, Texas, and staying less than twenty-four (24) hours.

6. The currency was subjected to a dog sniff and the dog alerted to the currency.

The first four factors and, arguably, the fifth are equally consistent with any number of illegal activities not associated with

an exchange of the currency for controlled substances. Although the sixth factor links the currency to controlled substances, it does not link the *claimants* use of the defendant currency to controlled substances. The sixth factor standing alone or in conjunction with the other factors, does not persuade this court that there was "a fair probability that the properties to be forfeited are the proceeds of illegal drug transactions." *United States v. Thomas,* 913 F.2d 1111, 1114 (4th Cir.1990). Accordingly, notwithstanding the legality of the seizure of the defendant currency, the court holds that the government did not have probable cause to forfeit the currency.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that claimants Gregory Brunson and Willie Dixon's May 17, 1991 motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the government's March 18, 1991 motion for summary judgment is DENIED.