**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**FIFTY–THREE THOUSAND EIGHTY–
TWO DOLLARS IN UNITED STATES
CURRENCY, $53,082.00, Defendant–Appellee,**

**Gregory Brunson; Willie W. Dixon,
Claimants–Appellees.**

**No. 91–2335.**

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted Sept. 25, 1992.

Decided Jan. 7, 1993.

Rehearing and Rehearing En Banc
Denied March 23, 1993.

Kathleen Moro Nesi, Asst. U.S. Atty. (argued and briefed), Detroit, MI, for plaintiff-appellant.

Charles H. Brown (briefed), Detroit, MI, for appellees.

Before: BOGGS and SUHRHEINRICH, Circuit Judges; and WELLFORD, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Plaintiff United States of America appeals from the grant of summary judgment for claimants Gregory Brunson and Willie W. Dixon in this civil forfeiture action brought under 21 U.S.C. § 881(a)(6). Finding no error, we AFFIRM.

## I.

On June 6, 1988, two DEA task force agents approached claimants as they sat in a departure area at Detroit Metropolitan Airport. The agents approached claimants initially because of the following observations: Brunson was shaking nervously; claimants were waiting in a departure area of a plane headed for Dallas, Texas, a known source city for narcotics; claimants carried only small gym bags for luggage; and claimants had isolated themselves from the crowd.

After the agents identified themselves as law-enforcement agents, claimants agreed to answer their questions. Upon request, claimants produced airplane tickets which had been purchased that same day with cash and had no baggage claim receipts. The tickets were for a flight to Dallas that afternoon and a return flight to Detroit the next day.

Claimants allowed the agents to search their duffel bags. While the agents looked through the bags, claimants revealed that together they were carrying $45,000 in their socks.[1] Brunson did not want to reveal the money in a public area, but agreed to reveal it in the DEA office at the airport. At this point, both agents advised claimants that they were not under arrest. Claimants still possessed their identification, tickets, and belongings.

Once in the office, claimants removed the money from their socks, and placed it on the table. At this point, agent Denton told claimants that the money would be subjected to a dog sniff. The dog reacted positively for drugs. The agents then seized the currency.

On February 8, 1989, the United States filed a complaint for forfeiture of the money in the United States District Court for the Eastern District of Michigan. On March 18, 1991, the government filed a motion for summary judgment and on May 17, 1991, claimants filed a cross-motion for summary judgment. The district court granted claimants' motion for summary judgment, finding that claimants' currency was seized in violation of the Fourth Amendment and that the government did not have probable cause to support the forfeiture.

On appeal, plaintiff argues that claimants consented to the seizure or, in the alternative, that the encounter was a *Terry* stop supported by reasonable articulable suspicion.

---

1. Claimants made several statements concerning the money. They stated that most of the money was earned working for the Detroit Board of Education. Dixon claimed part of the money came from lotto winnings while Brunson claimed he bought, refurbished, and sold HUD houses. Both claimed that they planned to invest the money in a limousine service in El Paso, Texas, while there visiting friends. None of the statements could be verified.

## II.

■ We review the grant of a motion for summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *United States v. $67,220 in United States Currency*, 957 F.2d 280, 284 (6th Cir.1992). Claimants presented nothing to contradict the government's version of what transpired; therefore, no genuine issues of material fact exist. Our only task is to decide whether claimants are entitled to judgment as a matter of law.

## III.

Airport stops and searches occur frequently and agents often rely on the "drug courier profile"[2] to justify stopping and investigating people for possible drug activity. While we recognize the governmental interest in stopping the drug traffic in our airports, *see United States v. Place*, 462 U.S. 696, 704, 103 S.Ct. 2637, 2643, 77 L.Ed.2d 110 (1983), we also recognize the need for careful protection of Fourth Amendment freedoms from overly-intrusive law enforcement activity. *See United States v. Saperstein*, 723 F.2d 1221, 1224 (6th Cir.1983); *United States v. Sanders*, 719 F.2d 882, 883 (6th Cir.1983). Fourth Amendment inquiries are fact-specific and each case must be evaluated on its own facts. *See Sanders*, 719 F.2d at 883.

The district court held that when the agents told claimants that the money would be subjected to a dog sniff, a seizure occurred. *United States v. Fifty–Three Thousand Eighty–Two Dollars in United States Currency*, $53,082.00, 773 F.Supp. 26, 30 (E.D.Mich.1991). The court also held that, under *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983),[3] the seizure was not reasonable because the seizure of the currency here was more intrusive than the seizure of luggage in *Place*, and the law enforcement interest was not great enough to justify a search based on less than probable cause. *$53,082.00*, 773 F.Supp. at 30–33. Finally, the court held that probable cause did not exist for the forfeiture. *Id.* at 33–34. We agree.

### A.

■ A seizure is "some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). When the agents "told" claimants that the money would be tested with a narcotics detection dog, they meaningfully interfered with claimants' possessory interests in the cash.

■ Further, claimants did not consent to the seizure because they were not presented with any choice. Consent must be "in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973). *See United States v. Cooke*, 915 F.2d 250, 252 (6th Cir.1990) ("[C]onsent must be unequivocal and intelligently given, untainted by duress or coercion."). Telling claimants the money would be tested by a narcotics dog was a conclusive statement, not a request; therefore, consent could not be given.

### B.

■ As there was no consent, the warrantless seizure must be justified under one of the narrow exceptions to the general requirement that seizures must be authorized by a warrant. *See Place*, 462 U.S. at 701, 103 S.Ct. at 2641. The government argues that the seizure was an investigative detention justified by reasonable articulable suspicion. We disagree.

---

**2.** "The 'drug courier profile' is an abstract of characteristics found to be typical of persons transporting illegal drugs." *Florida v. Royer*, 460 U.S. 491, 493 n. 2, 103 S.Ct. 1319, 1322 n. 2, 75 L.Ed.2d 229 (1983).

**3.** In *Place*, the Supreme Court held that luggage could be temporarily detained for exposure to a narcotics detection dog on the basis of reasonable articulable suspicions rather than probable cause. *Place*, 462 U.S. at 776, 103 S.Ct. at 2683. In essence, the Court treated the detention as a *Terry* stop. *Id.* at 707–09, 103 S.Ct. at 2644–45.

### 1.

Under *Place*, "[w]hen the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause." *Place*, 462 U.S. at 703, 103 S.Ct. at 2642. *Place* does not give blanket authority to base all seizures on no more than reasonable articulable suspicions; rather, *Place* allows courts to evaluate individual circumstances and decide whether reasonable articulable suspicions are all that is required to justify the seizure at issue. *See id.* In this case, we cannot find that reasonable articulable suspicions are all that is required.

In *Place*, the defendant travelled from Miami to New York. Upon his arrival at New York's LaGuardia Airport, Drug Enforcement Administration (DEA) agents stopped the defendant based on their own observations of suspicious activity, as well as observations of Miami law enforcement officers who had relayed their suspicions to the New York officers. The defendant's luggage was taken from him and subjected to a dog sniff without his consent. *Id.* at 699, 103 S.Ct. at 2640. Although the Court held that the seizure of the luggage was not properly limited in terms of duration, the Court also held that a dog sniff of luggage could be justified on less than probable cause because of the rapidity of the procedure and the limited intrusion on any privacy interest in the luggage. *Id.* at 707–10, 103 S.Ct. at 2644–46.

■ The facts of *Place* present a substantially different type of privacy interest than is presently involved. In *Place*, government agents seized the defendant's luggage; whereas, in this case, the agents seized cash which claimants carried on their persons. Luggage is routinely subject to airport scrutiny unlike items carried on one's person. In this regard, we agree with the district court, which stated:

Obviously, the privacy interests in luggage are of a different order than the privacy interests in personal effects carried on the person. First, luggage is routinely x-rayed as part of airport security. Second, with respect to the luggage itself, as opposed to its contents, the person's possession of the luggage is open and public. One need only observe a person to determine whether he is in custody of luggage. Personal effects, however, are concealed on the possessor's person.

*$53,082.00*, 773 F.Supp. at 32. Thus, a greater expectation of privacy exists in items carried on one's person. Probable cause is required to justify the seizure of such items.

■ Probable cause "means [a] 'reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion.'" *$67,220*, 957 F.2d at 284 (citations omitted). As discussed below, the facts held by the agents did not establish reasonable articulable suspicions; therefore, they surely do not show probable cause.

### 2.

■ Even if reasonable articulable suspicions could justify this seizure, these facts do not show such suspicions. Investigatory seizures must be supported by reasonable articulable suspicions which are based both on objective and particularized observations about the person seized. *See Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam); *United States v. Knox*, 839 F.2d 285, 289 (6th Cir.1988), *cert. denied*, 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). Drug profile characteristics can provide some objective basis for the government's suspicions, *Knox*, 839 F.2d at 289; however, courts have hesitated to rely too much on the drug courier profile because it lists behavior which can be attributed to perfectly legal activities, as well as illicit ones. *See Reid*, 448 U.S. at 441, 100 S.Ct. at 2754; *Saperstein*, 723 F.2d at 1227–29; *United States v. $80,760.00 in United States Currency*, 781 F.Supp. 462, 475 (N.D.Tex.1991). As stated in *Reid*, the drug courier profile "describe[s] a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to con-

clude that as little foundation [as the profile] could justify a seizure." *Reid,* 448 U.S. at 441, 100 S.Ct. at 2754. *See United States v. Cotton,* 928 F.2d 405 (6th Cir. 1991) (unpublished); ("The suspect's conformance to a drug courier profile does not, by itself, constitute reasonable suspicion."); *United States v. Millan,* 912 F.2d 1014, 1017 (8th Cir.1990) (drug courier profile does not justify a *Terry* stop); *United States v. Carrasquillo,* 877 F.2d 73, 76 (D.C.Cir.1989) (drug courier profile does not necessarily establish reasonable articulable suspicions). An officer's reasonable suspicion may, however, be based on characteristics included in a drug courier profile when it is accompanied by other evidence. *See United States v. Sokolow,* 490 U.S. 1, 8–11, 109 S.Ct. 1581, 1585–88, 104 L.Ed.2d 1 (1989).

As stated previously, a particularized basis for suspicion must also exist. *Knox,* 839 F.2d at 289. Although false or evasive statements to police officers indicate possible criminal activity, *see $67,220,* 957 F.2d at 286, we find that the statements made by claimants, even when viewed in conjunction with the drug courier profile characteristics, provide only "inchoate and unparticularized suspicion ... [not] specific reasonable inferences which [can be drawn] from the facts...." *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

### C.

█ The final inquiry in this case is whether the government established probable cause sufficient to justify the forfeiture

under 21 U.S.C. § 881(a)(6).[4] Under § 881, the government has the initial burden of proving probable cause to support a forfeiture. *United States v. $22,287.00, United States Currency,* 709 F.2d 442, 446 (6th Cir.1983). Probable cause is "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *$22,287.00,* 709 F.2d at 446–47 (citations omitted). Additionally, § 881(a)(6) requires that the government show probable cause of "a substantial connection between the property and the underlying criminal activity." *United States v. One 1984 Cadillac,* 888 F.2d 1133, 1136 (6th Cir.1989) (quoting Psychotropic Substances Act of 1978, Joint Explanatory Statement of Titles I and II, 95th Cong., 2d Sess. 8, *reprinted in* 1978 U.S.Code Cong. & Admin.News 9496, 9518, 9522). *See also United States v. Thomas,* 913 F.2d 1111, 1114 (4th Cir.1990).

█ Probable cause is determined on the basis of information possessed by the government at the time of the forfeiture proceeding, not just the initial seizure. *$67,220,* 957 F.2d at 284. However, the exclusionary rule applies to a forfeiture proceeding because of its quasi-criminal nature. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 702, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965). Therefore, only legally-obtained evidence may be used to establish probable cause. In this case, the dog's reaction cannot be used to show probable cause because it is the fruit of an illegal seizure and, as such, must be excluded.[5]

The remaining facts do not establish probable cause. Although the facts in

---

**4.** Section 881(a)(6) states:
(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
....
(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to

have been committed or omitted without the knowledge or consent of that owner.

**5.** Even if it could be considered, the evidentiary value of a narcotics detection dog's alert has recently been called into question. As noted by one district court, "[t]here is some indication that residue from narcotics contaminates as much as 96% of the currency currently in circulation." *United States v. $80,760.00 in United States Currency,* 781 F.Supp. 462, 475 & n. 32 (N.D.Tex.1991). *See also Use of Drug–Sniffing Dogs Challenged; ACLU Backs Complaint by Men Whose Pocket Cash Was Seized,* Wash. Post, May 6, 1990, at D1 ("I would not want to walk into court and rely exclusively on a dog sniff for

*$67,220* are similar, there is a critical distinction. In *$67,220*, we considered a positive dog reaction as part of the information showing probable cause. *$67,220*, 957 F.2d at 285–86. In the present case, the dog's reaction must not be considered. Without the dog's reaction, nothing shows a substantial connection between the cash and illegal drug activity. The remaining facts present only some suspicion that claimants were involved in some drug transaction. As stated above, although probable cause requires less than a prima facie case, it does require more than mere suspicion.

### IV.

For all the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of claimants.

WELLFORD, Senior Circuit Judge, dissenting.

The facts in this case are comparable to those in a recent civil forfeiture action which came before us for decision earlier this year. *See United States v. $67,220 in U.S. Currency*, 957 F.2d 280 (6th Cir.1992). Both cases involve an airport seizure of a large quantity of money possessed by a person observed by law enforcement agents. Robert Easterly, Jr. was observed with a bundle of "money protruding from one of [his] pockets and bulges in several other pockets." *Id.* at 282. Easterly gave his correct identification as he was about to board a flight, showed a ticket issued to him, and allowed the search of his camera bag. No drugs or drug activity was apparent. Upon a consensual search of his person, officers located five bundles of large denomination bills. Easterly told the officers that he had "about five thousand dollars." *Id.* at 282. The officers called to have Easterly's suitcase pulled off the plane, which he was about to board when they approached him, and they called for "a drug-sniffing dog." Easterly then responded to further questions, indicating he was carrying about $20,000 to buy jewelry at his intended destination. *Id.*

The officers then searched Easterly again and located more cash in his waistband—altogether, a total of $67,220. Nothing unusual was found in the suitcase, but the officers retained the $67,220. The officers told Easterly he was free to leave without his money. The dog handler indicated the dog, after sniffing, reacted positively with regard to the money, the camera bag and the suitcase. Easterly opposed the government's civil forfeiture action and claimed ownership. At the hearing, there was evidence confirming that Easterly had sold jewelry on a commission basis and that there was a "well-known jewelry flea market" in Easterly's destination area. *Id.* at 283. Easterly claimed at the forfeiture hearing that he had borrowed most of the money to "set up his own business," and provided purported names of the lenders. The district court then ordered the money returned. *Id.* We reversed the grant of summary judgment to Easterly, holding that "the government's evidence was sufficient to survive Easterly's motion for summary judgment" based upon assessment of probable cause "at the time of the forfeiture hearing." *Id.* at 284.

Important to the determination in the Easterly appeal was a view of all the evidence at the time of seizure and at the time of the hearing in a light most favorable to the government, the non-movant. We stated that "carrying a large sum of cash is strong evidence of some relationship with illegal drugs," and that "positive dog reaction is at least strong evidence of a connection to drugs" (despite "no indication in the record as to the trustworthiness of the dog" which substantially weakened this in-

a forfeiture of money," said Charles S. Saphos, Chief of the U.S. Justice Department's Narcotic and Dangerous Drugs Section. "There are a lot of guys out there that have shown that there is a trace [of] dope on a lot of money out there. And for that reason alone, I'd want more than just the dog."); *Dirty Money*, United States Banker, October 1989, at 10 (discussing study by Lee Hearn, Chief Toxicologist for Florida's Dade County Med-ical Examiner's Office that 97% of bills from around the country tested positive for cocaine; noting also that banks play a role in spreading the cocaine traces when tellers count and recount money, rubbing one bill against another). Thus, a court should "seriously question the value of a dog's alert without other persuasive evidence...." *$80,760.00*, 781 F.Supp. at 476 (and cases cited therein).

dication). *Id.* at 285. Relying upon similar facts and the holding in *United States v. $215,300 in U.S. Currency*, 882 F.2d 417 (9th Cir.1989), *cert. denied*, 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990), this court reversed the grant of summary judgment because Easterly failed to carry his summary judgment burden of showing "innocent ownership." *Id.* at 287. The case was *remanded for trial* because of the important factual considerations.

*$67,220 in U.S. Currency* was decided after the district court granted summary judgment to the claimant. I would remand this case to the district court for further consideration of the important factual issues involved in this case in light of the *$67,220 in U.S. Currency* decision. The district court should consider whether the facts show that there was probable cause shown by the government, whether the dog-sniffing, under the circumstances, was appropriate and significant, and whether the result of this activity was permissible evidence as in *$67,220 in U.S. Currency.*

I would accordingly reverse and remand this case for further consideration of the issues by the district court in light of *$67,-200 in U.S. Currency*, and also in light of the recent Supreme Court decision in *Florida v. Bostick*, —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).