27 F.3d 568
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
$8,880.00 IN UNITED STATES CURRENCY, Defendant,
Robert Anthony Dewey, Claimant-Appellant.
 No. 93-3127.
 United States Court of Appeals, Sixth Circuit.
 May 26, 1994.
 
 Before: BOGGS and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Robert Anthony Dewey ("Dewey"), claimant, arrived at the Cleveland airport about an hour before the time of departure of a commercial flight to Dallas, Texas. He paid $443.00 in cash for his one-way ticket issued in the name of Robert Anthony. Airport security officers received information that "a white male had just passed through the x-ray machine on the C concourse with a large sum of money." One drug enforcement agent testified that a security officer, presumably the earlier informant, "pointed out the white male to us." Based on this information about possessing an unusual amount of currency, the agents, not in uniform, identified themselves to Dewey and asked to talk to him. They also asked to see his ticket, which Dewey produced promptly. The destination on the ticket, Dallas-Ft. Worth, "was circled in red." This meant, according to agent Bacik, that the "ticket counter" indicated special attention be given to the ticket holder (during the Desert Storm era) by the "x-ray people," adding "apparently he fit their drug courier credentials at the ticket counter."
 
 
 2
 The agent involved speculated that therefore "possibly we had a drug courier on our hands," because "Dallas-Fort Worth is a common place to pick up marijuana." The agents asked Dewey where he was flying. When agent Krebs asked Dewey for identification, he responded that he did not have any identification, and he, in fact, carried no identification. Krebs then asked to see the inside of Dewey's carry-on bag and Dewey agreed. Prior to looking into the bag, Dewey informed the agents that he had a substantial amount of money. Shortly thereafter, the agents moved to a private room and Dewey accompanied them voluntarily. Agent Krebs testified that Dewey claimed that he was moving to Texas. Furthermore, Krebs stated that Dewey explained that he had the money because he did not believe in banks. Krebs and Bacik testified that Dewey's eyes were bloodshot and that he appeared nervous.
 
 
 3
 Officer Terry Goe of the Cuyahoga County Sheriff's Department was then summoned, along with Maggie, a "drug-sniffing" dog. Dewey was not allowed into the room during the time Maggie was utilized, despite his request. According to the agents and Officer Goe, Maggie alerted to the money by scratching and biting a container in which it was enclosed. At this point, the agents counted the money, $8,880.00, for which they gave Dewey a receipt, and allowed him to leave. While completing the receipt, Dewey stated that $6,000.00 belonged to his friend who lived in Texas, Ted Groebl, and that $2,880.00 belonged to him.[1] Dewey, who has no criminal record, stated that he was unemployed. The agents counted the money again in a money machine, at which time both testified that they smelled marijuana. Most of the money was packaged in $1,000 bundles secured with rubber bands. Dewey had no luggage except a carry-on duffel bag.
 
 
 4
 On October 30, 1991, the United States filed a complaint in forfeiture, seeking the forfeiture of the seized money pursuant to 21 U.S.C. Sec. 881(a)(6). Dewey filed a claim and an answer asserting an interest in the money. Dewey filed a motion and affidavit for leave to proceed in forma pauperis, in which he stated that his only sources of income for the calendar year 1990 were wages he received from Goodwill of America in the amount of $503.02 and Social Security in the amount of $373.93. The district court denied the United States' motion for summary judgment, and then held a bench trial before ordering the forfeiture of the $8,880.00 to the United States. The district court found: (1) that the United States had established probable cause to believe that a substantial connection exists between the defendant's currency and the illegal exchange of a controlled substance; and (2) that Dewey and Ted Groebl[2] had failed to show by a preponderance of the evidence that the defendant's currency is not subject to forfeiture. Dewey subsequently filed a timely notice of appeal.
 
 
 5
 Dewey's answer to the government's complaint in forfeiture admitted that he, and only he, "claims an interest in the defendant currency and filed a claim and a request to proceed In Forma Pauperis pursuant to 19 U.S.C. Sec. 1608."[3]
 
 
 6
 The district court made reference in its conclusions of law to "claimants Dewey and Groebl," deciding that both "failed to show by a preponderance of the evidence that the property [$8,880] is not subject to forfeiture." The judge found both not credible in their testimony. The district court permitted cross-examination of Groebl, over objection of Dewey's counsel, about a July, 1992 traffic stop of Groebl by an Illinois state patrolman and the finding of $20,000.00 belonging to him in the automobile along with a quantity of marijuana, which Groebl denied was his, although he later pled guilty to a marijuana charge.[4] If Groebl were considered a claimant then we conclude that the cross-examination was appropriate, at least to the extent of $7,000.00, which at the hearing both Dewey and Groebl said belonged to the latter. It would be relevant to showing whether $7,000.00 was the fruit or proceeds of drug dealing by Groebl. "A claimant's record of drug activity is a highly probative factor in the forfeiture calculus." United States v. $67,220.00 in U.S. Currency, 957 F.2d 280, 286 (6th Cir.1992).
 
 
 7
 It was therefore appropriate, insofar as the $7,000 was involved, for the district court to consider this later relevant evidence of Groebl's actions. "[A] district court must assess probable cause at the time of the forfeiture hearing." Id. at 284; see also United States v. The Premises and Real Property at 4492 S. Livonia Rd., 889 F.2d 1258, 1268 (2d Cir.1989). The government may produce evidence of a claimant's post-seizure or prehearing conduct to show that his money or property was substantially connected with drug activity. United States v. Fifty-Three Thousand Eighty-Two Dollars in U.S. Currency, $53,082.00, 985 F.2d 245, 250 (6th Cir.1993).
 
 
 8
 We find the circumstances here to be sufficient to show probable cause with respect to the seizure of the $7,000.00 in separate bundles of currency that included $50 and $20 bills. "The aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden. United States v. U.S. Currency, $83,310.78, 851 F.2d 1231, 1235 (9th Cir.1988)." $67,220.00 in U.S. Currency, 957 F.2d at 284. The destination of the holder of the money, his manner of travel, the suspicious explanation and inconsistent statements of the holder of the currency, elements of a drug courier profile, the lack of identity, and other factors were enough to establish probable cause tied in with a finding of lack of credibility of both Dewey and Groebl. We affirm the district court's conclusion of probable cause as to the $7,000.00. We also affirm the district court's conclusion that neither Dewy nor Groebl established a credible basis for showing or persuading that the $7,000.00 was not subject to forfeiture.
 
 
 9
 We now point to an additional basis for affirming the order of forfeiture as to the $7,000.00 belatedly "claimed" by Ted Groebl. Dewey never mentioned Groebl in his claim or in his answer or that he represented any other individual's interest in or claim to the currency in question. It may well be that Groebl's failure to make a claim, post a bond or file any intervening claim or answer to the complaint for condemnation may have constituted a waiver of his claim to the $7,000.00 made at the hearing. Groebl testified that he asked Dewey to bring to Texas the $7,000.00 from the drawer in his dresser in his apartment allegedly kept in "thousand dollar bundles." Groebl's testimony established that he had plenty of money to post the required bond under Sec. 1608. Groebl's "claim" came too late and was not sufficient under the plain meaning of 19 U.S.C. Sec. 1608. He waived his claim, in our view, by failing to file a formal claim and by failing to post the required bond. Ordinarily, costs would be assessed against the bond posted by an unsuccessful claimant under the statute. Groebl also pled no answer to the complaint in the district court. He has no basis for standing or legal claim to the $7,000.00 to which he now asserts ownership. See United States v. U.S. Currency in the Amount of $2,857.00, 754 F.2d 208 (7th Cir.1985); United States v. U.S. Currency & Coin: $558,110.00, 626 F.Supp. 517 (S.D.Ohio 1985).
 
 
 10
 On the other hand, we believe evidence of Groebl's drug activity or connections is not probative of Dewey's involvement in the absence of proof that Dewey himself was engaged in drug activity or that he had any relation to the July, 1992 Groebl arrest for marijuana. The district court considered Dewey's claim to the extent of only $1,880.00 apparently, and Dewey claimed in his testimony that only $1,880.00 was his. Groebl's arrest in July, 1992, provided no evidence that Dewey had any interest in the $20,000.00 that was seized at that time. This was, of course, after the seizure in the instant case.
 
 
 11
 We reverse the conclusion of the district court and the order of forfeiture of $1,880.00 for several reasons. We give less credence to the dog-sniffing aspect of the case because the government agents excluded Dewey from any opportunity to observe the dog's actions, thus preventing effectual means of cross-examination in this respect. Dewey's currency, only $1,880.00 (or at most $2,880.00), was not sufficiently large, we believe, to constitute a basis for an airport seizure. Our other recent airport cases have involved sums of $67,220.00, $53,082.00 and $22,287.00, and cases cited in our recent decisions have involved even larger amounts of currency seized at airports.
 
 
 12
 Dewey has not been shown to have any criminal record nor any involvement in drug activity. He readily consented to the search; he gave his true name to officers and the ticket reflected his first name and middle name. He did not arrive at the airport immediately before the flight departed, nor was he described as particularly apprehensive in appearance. We believe the matter of Dewey's claim to $1,880.00 is more analogous to the majority ruling in United States v. $53,082.00 in U.S. Currency, 985 F.2d 245 (6th Cir.1993). There we held that a seizure must be reversed for lack of probable cause because "although probable cause requires less than a prima facie case, it does require more than mere suspicion." Id. at 251. We noted that "[t]he suspect's conformance to a drug courier profile does not, by itself, constitute reasonable suspicion," id. at 250 (citation omitted), because such a profile also "lists behavior which can be attributed to perfectly legal activities." Id. at 249. As in $53,082.00 in U.S. Currency, the evidence in our case is primarily the simple existence of a significant sum of money (though much smaller in our case), aspects of the drug courier profile, false or evasive statements, and the additional item of the response of the drug detection dog. However, in the context of the exclusion of the claimant from the dog sniff, as discussed above, and the commingled presence of the $7,000.00 for which there was probable cause, we do not believe that this additional factor establishes probable cause as to Dewey's $1,880.00. Although the case is close, we are persuaded that we must reverse the order of forfeiture as to that amount.
 
 
 13
 We, accordingly, AFFIRM the district court as to $7,000.00 of the U.S. currency seized and forfeited; we REVERSE as to $1,880.00 of the money seized.
 
 
 14
 SILER, Circuit Judge, concurring in part and dissenting in part. I concur in the majority's affirmance of the forfeiture of the $7,000.00, but I respectfully dissent from the reversal of the forfeiture of the $1,880.00.
 
 
 15
 The majority opinion admits there was sufficient evidence to establish probable cause for the forfeiture of the $7,000.00, but the only distinction between the forfeiture of the $7,000.00 and the forfeiture of the entire seizure of $8,880.00 was the subsequent arrest of Groebl. Nevertheless, I believe the seizure of the $8,880.00 could be considered when determining whether the money carried by Dewey was a large sum. Although it pales in comparison with the seizures in the cases cited by the majority, it was a significant sum in view of the earnings claimed by Dewey in 1990.
 
 
 16
 Moreover, I would not lessen the credence of the dog sniffing evidence because Dewey was not permitted to observe. I do not condone the government agents' actions in excluding Dewey from the room, but no issue has been raised on appeal claiming the evidence should have been suppressed. See United States v. $53,082.00 in U.S. Currency, 985 F.2d 245 (6th Cir.1993). As the dog's conduct was admissible evidence, it was up to the district court to give it such weight as it felt was warranted.
 
 
 17
 I believe that the amount of cash being carried, especially in relation to Dewey's earnings in 1990 and previous years; the dog's alerting to the cash; Dewey's traveling to Dallas (a drug source city) on a one-way ticket paid for in cash; the lack of identification; the claim of moving to Texas with only a small carryon bag; and the purchase of the ticket in a different name, although similar, all support the district court's finding of probable cause. As we previously held, probable cause is less than prima facie proof but more than mere suspicion. Id. at 249. Therefore, I would affirm the judgment in full.
 
 
 
 [1]
 At the later forfeiture hearing, Dewey claimed that $7,000.00 was Groebl's money
 
 
 [2]
 Ted Groebl did not file a verified claim in this case. Groebl apparently claims $7,000.00 of the currency in controversy
 
 
 [3]
 The pertinent portions of 19 U.S.C. Sec. 1608 provide that:
 any person claiming ... [in forfeiture] may ... within twenty days from the date of the first publication of the notice of seizure file ... a claim stating his interest therein ... and the giving of a bond to the ... United States in the penal sum of $5,000 or 10% of the value of the claimed property....
 The statute further provides that "in case of condemnation ... the obligor shall pay all the costs and expenses of the proceedings to obtain such condemnation...."
 
 
 [4]
 Groebl also testified that a handgun found on this occasion was his. He testified that part of his $20,000.00 in cash found in the car came from a cashier check cashed in Texas