107 F.3d 871
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
$5,000.00 IN U.S. CURRENCY and $9,750.00 in U.S. Currency,
Defendants, Robert Walker and Thomas Harris,
Claimants-Appellants.
 No. 95-3895.
 United States Court of Appeals, Sixth Circuit.
 Jan. 3, 1997.
 
 Before: MARTIN, Chief Judge; BROWN, Circuit Judge; and McCALLA, District Judge.*
 PER CURIAM.
 
 
 1
 Robert Walker and Thomas Harris, Appellants, seek an award of attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). The United States District Court denied Appellants' application. Having considered Appellants' arguments, we AFFIRM the court's decision.
 
 I. FACTS AND BACKGROUND
 
 2
 On May 8, 1992, an anonymous informant notified a Continental Airlines operator that a passenger on a Continental Airlines flight from New York City to Cleveland would be carrying illegal drugs. The informant described the courier as a five-foot-ten-inch black man, wearing glasses and a suit, and carrying an attache case. This information was relayed to the Drug Enforcement Agency (DEA), and consequently, a DEA task force met the flight as it arrived in Cleveland. After observing the passengers disembark from the plane, task force agents concluded that Walker, a six-foot-four-inch black man, most closely matched the description provided by the informant. Agents followed Walker, who was accompanied by Harris, towards the baggage claim area. There, Walker retrieved his two garment bags from the baggage carousel, while Harris strolled outside the terminal. At that point, two DEA agents approached Walker and identified themselves.
 
 
 3
 In turn, Walker identified himself and informed the agents that he and Harris had just returned from a one-day trip to New York, where the two had met with Harry Caldwell of Epic Records. Upon request, Walker allowed the agents to search his bags. In the first bag, the agents found a bundle of $50 bills, totalling $9,750, to which Harris, who had returned, claimed ownership. In addition, Walker voluntarily produced $5,000 in cash from his coat pocket. The agents confiscated the money and informed Harris and Walker that the government would commence forfeiture proceedings pursuant to 28 U.S.C. § 881(a)(6). After Walker and Harris departed, agents brought in a trained canine to test the money for drug residue. The dog indicated the presence of narcotics.
 
 
 4
 To support further its forfeiture claim, the government sought additional evidence connecting the confiscated money to drug-related activity. During its investigation, the government uncovered evidence inconsistent with Appellants' prior statements. First, contrary to Walker's account, Caldwell of Epic Records denied meeting with him on May 7, 1992; and second, in an affidavit filed with the district court, Harris contradicted his own earlier statement to agents with respect to his ownership of the $9,750. In addition to the inconsistent statements, further investigation revealed that Harris had pled guilty to one count of drug trafficking and one count of permitting drug abuse on March 13, 1986. The government was unable, however, to discover more definite evidence to implicate the money in question with drug-related activity. When asked to explain the origin of the funds during discovery, Walker and Harris objected to and refused to answer the government's interrogatories.
 
 
 5
 On these facts, the government successfully moved the district court for summary judgment on its civil forfeiture claim. Upon review of the grant of summary judgment to the government, however, this Court reversed. United States v. $5,000 in U.S. Currency, 40 F.3d 846, 849 (6th Cir.1994). In so doing, the panel expressed the view that the government failed to present facts sufficient to show a substantial connection between the money and drug-related conduct. Id. at 489 (citing United States v. $53,082.00 in U.S. Currency, 985 F.2d 245, 251 (6th Cir.1993)). In light of that decision, the government chose not to proceed further and voluntarily dismissed its civil forfeiture claim.
 
 
 6
 Subsequently, Appellants commenced the present action for an award of attorney fees under the EAJA. The district court denied the application, and this appeal followed.
 
 II. ANALYSIS
 
 7
 We review the district court's decision whether to award attorney fees under the abuse of discretion standard. Pierce v. Underwood, 487 U.S. 552, 562-63 (1988). A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law in an improper manner, or uses an erroneous legal standard. Romstadt v. Allstate Ins. Co., 59 F.3d 608, 615 (6th Cir.1995) (quoting Southward v. South Cent. Ready Mix Supply Corp., 7 F.3d 487, 492 (6th Cir.1993)); Performance Unltd., Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1378 (6th Cir.1995).
 
 
 8
 According to the relevant provision of the EAJA, in any civil action brought by or against the United States, "a court shall award to a prevailing party other than the United States fees and other expenses ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In Pierce, the Supreme Court defined substantial justification as "justified to a degree that could satisfy a reasonable person." 487 U.S. at 565. Thus, to avoid paying the legal fees of the prevailing party, the government must demonstrate that its litigation position was reasonable in law and in fact. Id.; Lion Unif., Inc., Janesville Apparel Div. v. NLRB, 905 F.2d 120, 1255 (6th Cir.), cert. denied, 498 U.S. 992 (1990).
 
 
 9
 In the present case, the district court identified the following evidence as operative: the Appellants 1) made a one-day trip to New York; 2) carried large amounts of money which alerted a trained canine to the presence of narcotics; 3) gave a false account of the business transacted on the New York trip and gave conflicting accounts about the ownership of the money; and 4) refused without explanation to identify the source of the currency. According to the court, the existence of this evidence rendered the government's position reasonable. Moreover, as a second and independent justification, the district court reasoned that, because it had initially ruled in favor of the government on its motion for summary judgment, the government's position was therefore reasonable.
 
 A.
 
 10
 Appellants assign error to the district court's weighing of the facts. In so doing, they rely heavily on this Court's earlier decision in which the panel reversed the district court's grant of summary judgment to the government on the probable cause issue. $5,000 in U.S. Currency, 40 F.3d at 848. In that case, we determined that the facts advanced by the government in support of forfeiture were indistinguishable from those in $53,082.00 in U.S. Currency, 985 F.2d 245 (denying forfeiture for want of probable cause). Our earlier reversal, however, is not dispositive of the substantial justification issue presently before us. Even if incorrect, the government's litigation position may nevertheless be reasonable. United States v. 2323 Charms Rd., 946 F.2d 437, 440 (6th Cir.1991).
 
 
 11
 In assessing the reasonableness of the government's position in the instant case, the district court found that the facts in United States v. $67,220 in U.S. Currency provided an adequate basis in law and fact to support the government's position. 957 F.2d 280 (6th Cir.1992). That decision addressed much of the same types of evidence as that advanced by the government in the present case. In $67,220 in U.S. Currency, we reasoned that a positive reaction by a canine is at least strong evidence of a connection to drugs. Id. at 285 (citing United States v. $215,300 in U.S. Currency, 882 F.2d 417, 419 (9th Cir.1989)). Although this Court has criticized the value of a narcotics dog's alert since the decision in $67,220 in U.S. Currency, $5,000 in U.S. Currency, 40 F.3d at 489, the reasonableness of the government's actions must be measured in light of the law then in existence. Because this Circuit did not minimize the evidentiary value of a positive canine alert until after the parties argued the probable cause issue during the previous appeal, the government could reasonably rely on the weight afforded such evidence in $67,220 in U.S. Currency, 957 F.2d at 285. Inconsistent statements, prior drug-trafficking convictions, and carrying large sums of cash are likewise probative. Id. at 285-86 (citations omitted). Thus, in view of $67,220 in U.S. Currency, the district court determined that it was reasonable for the government to pursue its forfeiture claim.[1]
 
 
 12
 With respect to the unanswered interrogatories, a factor not addressed in $67,220 in U.S. Currency, Appellants claim that the district court erred when it considered their silence as probative in the fee-award assessment. Conversely, the government argues that the failure to respond suggests that the money may have come from an illegal source. In light of the deference afforded EAJA fee determinations, we need not resolve this dispute. In Pierce, the Supreme Court explained, "[b]y reason of settlement conferences and other pretrial activities, the district court may have insights not conveyed by the record, into such matters as whether particular evidence was worthy of being relied upon, or whether critical facts could easily have been verified by the Government." 487 U.S. at 560.
 
 
 13
 We conclude, therefore, that the district court did not abuse its discretion when it found the government's position to be substantially justified, considering the facts before it and existing caselaw.
 
 B.
 
 14
 We turn briefly to the district court's second and independent basis for denying Appellants an award of attorney fees. According to the court, the government's preliminary success provides an objective indication of the reasonableness of its position.
 
 
 15
 Merely evoking the results of an early-round victory, however, cannot resolve the substantial justification issue. See United States v. Paisley, 957 F.2d 1161 (4th Cir.), cert. denied sub nom. Crandon v. United States, 506 U.S. 822 (1992); Sierra Club v. Secretary of Army, 820 F.2d 513, 520 (1st Cir.1987). As Justice Scalia wrote, "[a]t least where ... the dispute centers upon questions of law rather than fact, summary disposition only proves that the district judge was efficient." Pierce, 487 U.S. at 568-69.
 
 
 16
 Thus, absent further analysis by the district court, we do not find the government's preliminary success to be an indication of the reasonableness of its position. Our conclusion in this respect does not change the outcome of the appeal, however. As discussed in the preceding section, because the district court did not abuse its discretion in light of the facts and existing caselaw, we AFFIRM its denial of an award of attorney fees.
 
 
 
 *
 The Honorable Jon Phipps McCalla, United States District Judge from the Western District of Tennessee, sitting by designation
 
 
 [1]
 Notably, although this Court found the government's forfeiture action to be indistinguishable from $53,082 in U.S. Currency, this Court decided that case after the government commenced its forfeiture proceedings. Consequently, the government's litigation position throughout the district court proceedings cannot be characterized as unreasonable by virtue of $53,082 in U.S. Currency. Likewise, in light of the co-existence of $53,082 in U.S. Currency and $67,220 in U.S. Currency, the government's failed attempt in the previous appeal to analogize its forfeiture action to $67,220 in U.S. Currency does not render the government's position unreasonable